IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN ELLEDGE,

Plaintiff,

vs.

THE CITY OF PITTSBURGH AND
LARRY R. SCIROTTO, FORMER
CHIEF OF POLICE

Defendants,

CIVIL ACTION NO.

JURY TRIAL DEMANDED

**COMPLAINT IN CIVIL ACTION**

FILED ON BEHALF OF
PLAINTIFF

COUNSEL OF RECORD FOR
THIS PARTY:

THOMAS B. ANDERSON,
ESQUIRE
PA ID #79990

BORDAS & BORDAS, PLLC
One Gateway Center
420 Fort Duquesne Blvd, Suite 1800
Pittsburgh, PA 15222
tanderson@bordaslaw.com
Telephone number: 412-502-5000
Facsimile number: 412-709-6343
*Counsel for Plaintiff*

**JURY TRIAL DEMANDED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT PENNSYLVANIA

| | |
|---|---|
| BRIAN ELLEDGE, | CIVIL ACTION NO. |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. | |
| THE CITY OF PITTSBURGH AND LARRY R. SCIROTTO, FORMER CHIEF OF POLICE | |
| Defendants, | |

## COMPLAINT IN CIVIL ACTION

NOW COMES, Brian Elledge, by and through his counsel, Thomas B. Anderson, Esquire and the law firm of Bordas and Bordas, PLLC, and file this Civil Complaint alleging the following:

**I.     Jurisdiction**

1. This action is brought pursuant to The Civil Rights Act of 1866, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 to redress the deprivation by the defendants of Plaintiff's civil rights, and in particular, the right to be free from illegal, invidious and damaging discrimination in his employment, which rights are guaranteed by the Constitution of the United States and the laws and statutes enacted pursuant thereto.

**II.     Venue**

2. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants regularly conduct business in this district, and because a

substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### III.   The Parties

3.   Plaintiff, Brian Elledge ("Elledge") is an adult Caucasian individual who lives in Pittsburgh, Allegheny County, Pennsylvania.

4.   Defendant, City of Pittsburgh ("City"), is a Pennsylvania Municipal corporation with administrative offices located at 414 Grant Street, Fifth Floor, Pittsburgh, Pennsylvania. At all times relevant to this Complaint, Defendant City acted through its partners, directors, agents, subsidiaries, officers, employees and assigns acting within the full scope of their respective agency, office, employment or assignment.

5.   Defendant Larry R. Scirotto ("Scirotto"), is the former Chief of the City of Pittsburgh Bureau of Police. Upon information and belief, Scirotto's current address is 939 N. Buckner Blvd, Dallas Texas.

### III.   Factual Background

6.   Elledge is a Sergeant in the Pittsburgh Bureau of Police. Elledge was employed as a supervisor on the night shift assigned to the Special Deployment Division ("SDD"), traffic unit of the Police Department. The SDD is an elite division of the Police Department in which officers patrol and conduct police business on motorcycles. Elledge was transferred out of SDD at the direction of Scirotto on July 11, 2023.

### Scirotto's known history of reverse race discrimination

7. Scirotto was hired by the City as the Chief of Police by former Mayor Ed Gainey in May of 2023 despite the fact that Scirotto had been fired from the Fort Lauderdale Police Department because Scirotto illegally engaged in reverse race discrimination while the Police Chief in Fort Lauderdale. In Fort Lauderdale, Scirotto intentionally used race to favor minority employees and/or applicants to the detriment of white employees and applicants.

8. In June of 2023, Scirotto filed a wrongful discharge lawsuit against the City of Fort Lauderdale in the United States District Court, Southern District of Florida, which was ultimately dismissed. In the complaint, Scirotto alleged that an investigation was conducted because of complaints and allegations of workplace discrimination against white employees. Scirotto attached to the complaint an investigative report that detailed reverse race discrimination on the part of Scirotto. The report detailed, among other things, discrimination against a senior white employee who was described as "very easily' the top choice based on his body of work within the Department." Reportedly, Scirotto's response was:

- "not Charlie"
- "it's between these two" (pointing to the names of Stone and Cruz, two males of color)
- "this is between Cecil and Eddie" (Stone and Cruz)
- "which one is blacker"
- " this wall is too white"

The report went on to quote Scirotto during an interview that "he was going to 'consider diversity at every opportunity.' He stated that one had to be 'intentional' in his decision making."

9. On March 5, 2022, CNN reported a story titled: "Fort Lauderdale police chief fired over minority-first practices in hiring and promotion, report says." The report quoted Scirotto as saying: "If promoting diversity is the hill I'm going to die on, I will sleep well tonight." Scirotto reportedly admitted to making the comment that the wall was "too white,' 'because he felt it was not reflective of the community, according to the report." The CNN report also quotes Scirotto's comments during an interview in which he talked about his comments about the wall being "too white." Scirotto said: "The bottom row had several white males and one white female. And we're talking in conversations as it relates to our community and the expectation of a diverse and inclusive organization. And how do I purport we have that when the entire bottom row are white men?"

10. While Scirotto was still nominated to be the City's next police chief local news organizations reported that Scirotto had been fired by Fort Lauderdale following an investigation that accused him of reverse discrimination against white employees.

**The City's sham investigation of a false DHR complaint against Elledge**

11. In March of 2023, a Discrimination Harassment Retaliation ("DHR") complaint was filed by Officer Larry Crawford, a black officer in the SDD division supervised by Elledge. The City's Human Resources Department conducted a flawed,

unsupportable sham investigation of Crawford's complaint that he was receiving less desirable work assignments.

12. The City's DHR investigation and resulting report was so flawed and so biased against Elledge that on July 12, 2023, Acting Commander, Charles Henderson, sent a memo to Chief Scirotto, detailing the flaws in the report and the City's unfair review of Crawford's complaint and poor investigative practices.

13. The City's investigation of Crawford's complaint was so bad that even Scirotto and the City's Public Safety Director agreed that a Disciplinary Action Report ("DAR") against Elledge was withdrawn. Nonetheless, Scirotto discriminated against Elledge by transferring Elledge out of the elite SDD unit, in July of 2023. When Elledge was transferred out of SDD, he was replaced by Sergeant Jeffrey Tagmyer. The City later engaged in blatantly coercive and unfair labor practices against Tagmyer when he was subpoenaed to testify in support of Elledge at a labor arbitration hearing.

14. Following the withdrawal of the DHR report, a new DAR was filed against Elledge on August 7, 2023, alleging that Elledge intentionally violated a directive that Elledge not have contact with Crawford beyond necessary duties, without another supervisor present, when Elledge accidentally included Crawford on a group text message in which he made a disparaging comment about Crawford.

15. Despite the fact that Commander Henderson advised Scirotto in writing that Henderson truly believed that Elledge's text was sent in error to a group text instead of a private text conversation with Sergeant Reiff, and the fact that Elledge immediately recognized and admitted to his mistake and that he did not intentionally violate a

directive, Scirotto disagreed and ordered Henderson to initiate a second DAR against Elledge for "insubordination."

16. On September 14, 2023, Elledge was given an oral reprimand based on the DAR for insubordination.

### The Union Grievance against the City on behalf of Elledge

17. In July of 2023, the Fraternal Order of Police ("FOP") filed a grievance against the City alleging that Elledge's transfer out of SDD was disciplinary and in violation of the applicable Collective Bargaining Agreement.

18. An arbitration hearing concerning the City's disciplinary transfer of Elledge was initially scheduled to take place on February 1, 2023. A subpoena was issued for Sergeant Tagmyer to appear at the hearing to testify on behalf of Elledge. However, the hearing was continued at the request of the City.

19. Between the first hearing date and the second date, the City attempted to coerce Tagmyer by threatening him if he did not speak to the City solicitor without counsel and without union representation. The City was clearly trying to coerce a material witness in its continued efforts to discrimination against Elledge and retaliate against him for challenging the discriminatory discipline.

20. The FOP filed a grievance related to the City's coercion of Tagmyer related to his testimony in support of Elledge. As a result, the hearing examiner concluded that the City had committed unfair labor practices in violation of the PLRA and Act 111. The examiner ordered the City to cease and desist from interfering with,

restraining, or coercing employees in the exercise of the rights, guaranteed by the PLRA and Act 111, among other things, on September 16, 2025.

21. At the conclusion of the grievance hearing related to Elledge, the Arbitrator issued an opinion and award in favor or the FOP. As part of the decision, the arbitrator found that "there was absolutely no evidence provided in the record to support a good of the Bureau determination or defense" and that the good of the Bureau was a "pretext behind disciplinary motives where just cause could not be proven." The Arbitrator further found that Elledge's transfer was made in an "arbitrary, capricious and unreasonable manner."

22. The Arbitrator Award dated July 5, 2024, states:

Based on the discussion and reasoning above, the grievance is granted.

The City is hereby ordered to return Sergeant Elledge to his former position on the motorcycle as Sergeant in the Special Deployment Division, with all rights and privileges.

The City is hereby ordered to make the Grievant whole for any and all loss of earnings incurred with respect to his regular wages which includes shift differential and any benefits that may have been affected by the transfer.

As to the Grievant's request for payment of overtime and secondary employment opportunities, that request is denied as those matters are purely conjecture.

Such an award here, concerning overtime and secondary employment would be only speculative as no evidence or proof was provided that would show how much overtime or secondary employment opportunities were available and would have been either offered or mandated, during the timeframe of the Grievant's transfer from the SDD unit and what if any, percentage of those opportunities offered or mandated would the Grievant have worked.

23. As stated in the preceding paragraph, in July of 2024 the Arbitrator ordered that Elledge was to be reinstated to his Sergeant position. Shortly

thereafter, in August of 2024, the City filed a statutory appeal of the Arbitration award and Scirotto eliminated all the Sergeant positions in the SDD in an apparent effort to nullify the Arbitrator award.

24. In October of 2024, Scirotto retired from his job as Chief of Police after a controversy arose concerning his desire to referee NCAA basketball while still holding the job of Chief of Police.

**The City Doubles Down on its Discrimination and Retaliation against Elledge**

25. Rather than simply return Elledge to his former position, the City has decided to double and triple down on its discrimination and retaliation against Elledge as stated above, the City appealed the Arbitrator's decision to the Court of Common Pleas of Allegheny County and eliminated all Sergeant positions.

26. The City lost its appeal on March 10, 2025, when the Honorable Judge Alan Hertzberg denied the City's Statutory Appeal. Judge Hertzberg explained the reasons for the City's loss in an Opinion dated May 27, 2025. In part, the opinion states:

> Officer Elledge's grievance strongly challenges the DHR investigation, how it was conducted and argued that his due process rights were violated in the investigation. (Arbitration award p.3). In addition to the DHR investigation being explicitly challenged in the grievance, the City's own witness Chief Larry Scirotto acknowledged that the investigation could not be the basis for the discipline. (R.R. p. 278a)). Further, Counsel admitted that the DHR was a part of the reason for Officer Elledge's transfer. (R.R. 68a).

27. The City then appealed Judge Herzberg's ruling to the Commonwealth Court. Oral argument was held on March 3, 2026. During the oral argument, the City argued that Scirotto's transfer was made in an effort to protect Crawford, who the city

referred to several times as "the victim" of racial discrimination. Contrary to the City's false and fanciful argument it is Elledge who is clearly a victim of the defendants' ongoing reverse racial discrimination, harassment and retaliation.

### COUNT I – 42 U.S.C. § 1981

### Racial Discrimination/Retaliation

28. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully stated herein.

29. The above described unlawful employment practices by Defendants, their agents, servants and employees violate 42 U.S.C. § 1981.

30. The Defendants' actions were performed with malice and/or reckless indifference to Plaintiff's federally protected rights.

31. As a direct and proximate result of the above-mentioned employment practices, Plaintiff has lost income, fringe benefits, retirement contributions, lost future job opportunities, future substantial pecuniary losses, non-pecuniary losses and he has suffered embarrassment, humiliation, harm to his reputation, emotional distress, suffering, inconvenience and mental anguish for which he seeks damages.

WHEREFORE, Elledge demands judgment against Defendants, and damages in an amount that this Court and a jury deem fair and reasonable including, but not limited to, front pay, back pay from the date of the wrongful acts, equitable relief, compensatory damages, punitive damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

## COUNT II – 42 U.S.C. § 1983

### Racial Discrimination/Retaliation

32. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully stated herein.

33. As more fully described herein before above, Plaintiff was and continues to be discriminated against and treated differently by the Defendants on the basis of his race in that he was disciplined, denied his due process rights, harassed, subjected to a hostile work environment, and denied benefits attendant to his employment because of his race and the fact that he challenged the defendants' illegal discrimination and retaliation.

34. Defendants' actions were intentionally undertaken under color of state law, on the basis of race.

35. Defendants' alleged non-discriminatory reason(s) for their actions were a mere pretext for racial discrimination and retaliation.

36. As a direct and proximate result of the above-mentioned employment practices, Plaintiff has lost income, fringe benefits, retirement contributions, lost future job opportunities, future substantial pecuniary losses, non-pecuniary losses and he has suffered embarrassment, humiliation, harm to his reputation, emotional distress, suffering, inconvenience and mental anguish for which he seeks damages.

WHEREFORE, Elledge demands judgment against Defendants, and damages in an amount that this Court and a jury deem fair and reasonable including, but not limited

to, front pay, back pay from the date of the wrongful acts, equitable relief, compensatory damages, punitive damages, prejudgment interest, post-judgment interest and reasonable attorney's fees including litigation expenses and the costs in this action.

### Jury Trial Demand

Plaintiff respectfully requests a trial by jury on all issues do triable.

Respectfully submitted,

By: /s/ *Thomas B. Anderson*
THOMAS B. ANDERSON, ESQUIRE
PA ID #79990
Bordas & Bordas, PLLC
One Gateway Center
420 Fort Duquesne Blvd, Suite 1800
Pittsburgh, PA 15222
tanderson@bordaslaw.com
T: (412) 502-5000
F: (412) 709-6343
*Counsel for Plaintiff*