**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRIAN ELLEDGE,<br>Plaintiff,<br>v.<br>THE CITY OF PITTSBURGH AND LARRY R. SCIROTTO, FORMER CHIEF OF POLICE[.] | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE No. 2:26-CV-00396<br><br>JURY TRIAL DEMANDED<br><br>Judge Christy Creswell Wiegand |

**DEFENDANT LARRY R. SCIROTTO'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Larry R. Scirotto ("Chief Scirotto") respectfully submits this Brief in Support of his Motion to Dismiss Plaintiff's Amended Complaint.

## I. INTRODUCTION

Plaintiff Brian Elledge ("Mr. Elledge") alleges that former Pittsburgh Bureau of Police Chief Scirotto discriminated against him because Mr. Elledge is white. ECF No. 9, ¶ 26. Mr. Elledge claims that this alleged discrimination came about when Mr. Elledge was transferred out of his sergeant job in the Special Deployment Division after a black officer accused Mr. Elledge himself of discriminatory behavior. *Id.*, ¶¶24, 26. These claims fail for multiple reasons, including the fact that Chief Scirotto's alleged transfer of Mr. Elledge occurred more than two years ago rendering Mr. Elledge's claims against Mr. Scirotto time barred.

In his Amended Complaint, Mr. Elledge failed to identify whether Mr. Scirotto is named in his official or his individual capacity, but this lack of specificity is of no matter because Mr. Elledge's claims fail under either theory of liability. The reasons why any official capacity claims against Chief Scirotto fail are detailed in the City of Pittsburgh's Motion to Dismiss and are incorporated into Chief Scirotto's individual claim arguments. *See* ECF Nos. 13-14. Essentially, any official capacity claims against Chief Scirotto are identical to the claims against the City. *See*

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.")(emphasis in original). Mr. Elledge's individual capacity claims against Chief Scirotto fail for similar reasons as the claims against the City. Mr. Elledge's individual capacity claims fail because his claims are time barred and because there is no remedy under § 1981 against state actors like Chief Scirotto, and thus, his Amended Complaint should be dismissed with prejudice.

## II. LEGAL STANDARD

To survive a motion to dismiss under 12(b)(6), a plaintiff must plead facts that "raise a right to relief above the speculative level." *Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017) (internal quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Third Circuit has acknowledged that the Federal Rules of Civil Procedure impose a "liberal notice pleading standard" on plaintiffs, *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005), a complaint must still allege facts that "go beyond merely creating a suspicion of a legally cognizable right of action." *Abulkhair v. Toskos*, 430 F. App'x 98, 102 (3d Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). Accordingly, a plaintiff's obligation to provide the "grounds" of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, courts analyzing the sufficiency of a complaint must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements," *James v. City of Wilkes-Barre,* 700 F.3d 675, 681 (3d

Cir. 2012), and "are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555)).

## III. FACTUAL BACKGROUND[1]

The facts of the Amended Complaint appear to boil down to the allegation that Mr. Elledge seeks to have Sargent positions reinstated in the Special Deployment Division ("SDD") of the City's Bureau of Police ("PBP") so that he can return to his "elite" position as a sergeant in that unit. The rest of Mr. Elledge's Amended Complaint is a compendium of his extensive grievance and disciplinary history seemingly dating back to a time before Chief Scirotto was serving as the Chief for the City of Pittsburgh's Bureau of Police. The Amended Complaint also details diversity efforts of the City dating back to 2019 and many statements Chief Scirotto made about diversifying "rank and file" officers and recruiting classes. ECF No. 9, ¶¶ 12-15, 16, 18.

According to the Amended Complaint Mr. Elledge's disciplinary history starts as far back as February 2023[2], when he had a scheduled "arbitration hearing concerning the City's transfer of [Mr.] Elledge." ECF No. 9, ¶31. This is the only transfer contemplated in the Amended Complaint. Then, in March of 2023, a black police officer ("Officer Crawford") supervised by Mr. Elledge, filed a Discrimination/Harassment/ Retaliation ("DHR") complaint against Mr. Elledge. ECF No. 9, ¶24. Subsequently in May of 2023 Chief Scirotto was hired as the Chief of Police for the PBP. *Id.*, ¶ 17. Around the time he was hired, Chief Scirotto stated that he wanted to diversify "the rank and file." ECF No. 9, ¶18. Mr. Elledge then claims that on July 11, 2023, he was transferred out

---

[1] Chief Scirotto summarizes and accepts as true facts alleged in Mr. Elledge's Complaint at ECF No. 9 for purposes of this Motion to Dismiss only.

[2] At first blush it might seem like the February and March 2023 dates could have occurred on the same dates in 2024. However, when examined, these dates would also be incorrect because it would mean that the arbitration award would have had to happen before Mr. Elledge was transferred, which couldn't be the case.

of SDD by Chief Scirotto. *Id*, ¶6. The very next day, July 12, 2023, Commander Charles Henderson "send a memo to Chief Scirotto, detailing the flows in the report and the City's unfair review of Crawford's complaint and poor investigative practices." *Id*., ¶25. Also, in July 2023 the police union, the Fraternal Order of Police ("FOP"), filed a grievance against the City on Mr. Elledge's' behalf claiming that discipline as a result of Officer Crawford's DHR complaint "in violation of the applicable Collective Bargaining Agreement" because it was a "sham" investigation. *Id*., ¶¶24, 30, 33-34. On July 12, 2023, The City and, specifically, Chief Scirotto, withdrew the Disciplinary Action Report ("DAR") that resulted from the DHR report. ECF No. 9, ¶25. In fact, Chief Scirotto agreed with the FOP and testified that the investigation couldn't be grounds for discipline. *Id*, ¶39 ("In addition to the DHR investigation being explicitly challenged in the grievance, the City's own witness Chief Larry Scirotto acknowledged that the investigation could not be the basis for the discipline."). On July 5, 2024, the FOP won the grievance on behalf of Officer Elledge. *Id*., ¶35. The City filed a timely appeal of the Arbitration Award to the Court of Common Pleas of Allegheny County. *Id*., ¶ 36. In October of 2024, Chief Scirotto retired and left employment with the City. *Id*., ¶ 37. The City's appeal to the Court of Common Pleas was unsuccessful and was dismissed on March 10, 2025. ECF No. 9, ¶39. The City appealed this decision to the Commonwealth Court who affirmed the lower courts on May 7, 2026. *Id*., ¶ 41. Throughout the pendency of the appeal, and even to the date of this filing, Mr. Elledge is employed at the rank of sergeant but is not a sergeant in SDD because there are no sergeants in SDD.

In a related but separate disciplinary issue that occurred while the above-described grievance litigation was ongoing Mr. Elledge "violated a directive that [he] not have contact with [Officer] Crawford beyond necessary duties, without another supervisor present." *Id*., ¶27. He did violate this directive. The violation of this directive occurred when, after getting this directive, Mr.

Elledge sent a disparaging text message about Officer Crawford directly to Mr. Crawford. *Id*. Mr. Elledge claims that he inadvertently sent the disparaging message about Officer directly to Officer Crawford instead of simply disparaging to a group of white police officers behind Officer Crawford's back, just like Mr. Elledge had intended all along. *Id*. Mr. Elledge received an oral reprimand for his insubordination. *Id*., ¶ 29.

# IV. ARGUMENT

At the outset, it should be noted that Mr. Elledge has failed to specify what Constitutional Amendment his alleged injuries fall under. And, "[i]t is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Hum. Rels. Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017)(quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)). This Court should dismiss Mr. Elledge's claims on this insufficiency alone. However, if the Court is to consider the allegations in Mr. Elledge's Amended Complaint, it appears he may be trying to allege a Substantive Due Process violation under the 14th Amendment.[3]

Plaintiff's claims should be dismissed for the reasons throughout this Brief as well as the reason put forth in the City's Motion to Dismiss.[4]

## A. <u>The statute of limitations expired on July 11, 2025, Mr. Elledge did not initiate this lawsuit until March 11, 2026.</u>

Mr. Elledge's claims accrued when he was removed from SDD, which seems could have been as early as early 2023. ECF No. 9, ¶ 31. However, even at the latest, if the decision to move Mr. Elledge constituted a constitutional injury, it accrued on July 11, 2023 when he was moved

[3] As argued elsewhere in this Motion and Brief Chief Scirotto denies Mr. Elledge has stated any claims.

[4] Chief Scirotto is also entitled to qualified immunity in this case and reserves his right to argue his qualified immunity if this case is not dismissed at the pleading stage.

out of SDD. *Id*., 6. This means that Mr. Elledge had two years from July 11, 2023 to file his claims, but he failed to file by then an missed the statute of limitations, which means his claims must be dismissed as a matter of law.

While § 1983 contains no explicit language regarding statute of limitations, federal courts tend to apply the personal injury statute of limitations of the state where the action occurred. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660 (1987). In *Wilson v. Garcia,* 471 U.S. 261 (1985), the Supreme Court held that all § 1983 actions were to be uniformly characterized as personal injury actions. Thus, the state where the action occurred governs the statute of limitations for the §1983 claim. *Id.* This alleged constitutional violation occurred in Pennsylvania, where Due Process claims, if these claims are interpreted as constitutional injuries, are subject to a two-year statute of limitations provided by 42 Pa. Cons. Stat. § 5524. *Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir. 1985).

Next, there is ample case law instructing on when § 1983 claims accrue. "[C]laims under § 1983 accrue when the 'plaintiff knew or should have known of the injury upon which his action is based.'" *Spindler v. Se. Pennsylvania Transp. Auth.*, 47 F. App'x 92, 95–96 (3d Cir. 2002)(quoting *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998)(bracket removed). "'The pendency of a grievance, or some other method of collateral review of an employment decision,' however, 'does not toll the running of the statute of limitations.'" *Spindler,* 47 F. App'x at 95–96 (quoting *Del. State Coll. v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).

This action, as it relates to Chief Scirotto, is premised on his decision to transfer Mr. Elledge out of SDD. Mr. Elledge would have been aware he was moved out of SDD as he made clear in the Amended Complaint. The Amended Complaint establishes that this occurred on July

11, 2023. ECF No. 9, ¶6. Based on his knowledge that he was not longer working in SDD, Mr. Elledge knew or should have known of the injury upon which his action is based on July 11, 2023, when he was transferred. Next, the only actions that came afterward are not attributable specifically to Chief Scirotto and include only the pendency of the FOP grievance on behalf of Mr. Elledge and the subsequent appeal. The FOP grievance did not toll the statute of limitations for § 1983 claims which accrued on July 11, 2023 and expired two years later on July 11, 2025. However, Mr. Elledge did not initiate this lawsuit until months later on March 11, 2026. ECF No. 1. Thus, based on Mr. Elledge's failure to file any complaint or claim against Chief Scirotto in a two year period before the expiration of the statute of limitations, his Amended Complaint and the claims against Mr. Scirotto must be dismissed with prejudice.

**B. <u>Mr. Elledge cannot state a § 1981 claim against Chief Scirotto, a state actor.</u>**

The "'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" *McGovern v. City of Philadelphia*, 554 F.3d 114, 120-21 (3d Cir. 2009)(*Jett v. Dallas Independent School District,* 491 U.S. 701, 733 (1989)). Accordingly, Mr. Elledge's § 1981 claim against Chief Scirotto fails as a matter of law and should be dismissed with prejudice.

The Third Circuit examined argument that §1981 created a cause of action against state actors in 2009 and determined that "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *McGovern*, 554 F.3d at 120-21. The Third Circuit pointed out that the familiar term 'rights and remedies' was "not a matter of semantics" and that the distinction was important especially in the context of examining means for relief sought against state actors under §1981. *Id*. When examining this question, the Third Circuit conducted a two-step process to determine whether when drafting § 1981 "(1) whether Congress

intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff." *Id.*, at 116. The Third Circuit found that § 1981did not create a remedy for private causes of action against state actors because § 1983 was established "as the exclusive remedy for violations of § 1981 by state actors." *Id.*, at 122.

Here, Chief Scirotto, even in his individual capacity, is party to this lawsuit as a state actor. He is only named in this case because he was the Chief for some portion of the time that the incidents resulting from Officer Crawfords DHR complaint against Mr. Elledge. Chief Scirotto left two years before the final resolution of the appeals in the case and seemingly abandoned any retaliatory path because Chief Scirotto, withdrew the Disciplinary Action Report ("DAR") that resulted from the DHR report. ECF No. 9, ¶¶ 25, 39. The conduct attributed to Chief Scirotto arose from his exercise of authority as PBP Chief. Mr. Elledge alleges that Chief Scirotto directed the transfer and eliminated SDD Sergeant positions while acting as Chief. *Id.*, ¶¶ 6, 28, 36. Plaintiff therefore cannot maintain a separate § 1981 damages action against Chief Scirotto for those alleged acts because Chief Scirotto is a state actor and the only remedy to the alleged injuries, if any, would fall under §1983. Mr. Elledge's §1981 claims against Chief Scirotto should be dismissed with prejudice.

## V. CONCLUSION

For the forgoing reasons, as well as the reasons stated in the City's Motion to Dismiss, which are incorporated here, Chief Scirotto respectfully requests that Mr. Elledge's claims be dismissed with prejudice.

Respectfully submitted,

LISA ZEIDNER MARCUS
City Solicitor

s/ *Julie E. Koren*

JULIE E. KOREN
Associate City Solicitor
PA ID # 309642

City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
(412) 255- 2635
Julie.Koren@pittsburghpa.gov
*Counsel for Defendants*